[Cite as *State ex rel. Barnett v. Indus. Comm.*, 2015-Ohio-3898.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Betty J. Barnett, | : | |
| Relator, | : | |
| v. | : | No. 14AP-628 |
| Industrial Commission of Ohio and Columbus Schools[,] Columbus Board of Education, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on September 24, 2015

*Connor, Evans & Hafenstein, LLP, Katie W. Kimmet, Kenneth S. Hafenstein* and *Nicole E. Rager,* for relator.

*Michael DeWine*, Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

HORTON, J.

{¶ 1} Relator, Betty J. Barnett, brings this original action seeking a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying her permanent total disability ("PTD") compensation, and to order the commission to enter an order awarding her PTD compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate, who has now rendered a decision and recommendation that includes findings of fact and conclusions of law and is appended to this decision. The magistrate concluded that the Staff Hearing Officer's ("SHO") incorrect statement regarding relator's attempts to obtain vocational training did not require this

court to issue a writ of mandamus, and that the commission did not abuse its discretion by considering relator's work history. Relator has filed objections to the magistrate's decision, and the matter is now before us for our independent review.

{¶ 3}    As reflected in the facts given in the magistrate's decision, relator was involved in a work-related injury on August 19, 2011, when she slipped and fell down the stairs of the school bus she was driving for her employer.  Relator's industrial claim was allowed for the following conditions: fracture lumbar vertebra closed; lumbar disc protrusion L2-L3; substantial aggravation of pre-existing lumbar spinal stenosis L2-L3; lumbar facet arthropathy L4-L5; substantial aggravation of pre-existing lumbar spondylolisthesis L4-L5; substantial aggravation of pre-existing facet arthropathy at L2-L3.

{¶ 4}    Following her injury, relator was referred to the Ohio Bureau of Workers' Compensation ("bureau") vocational rehabilitation program. Relator's managed care organization ("MCO") vocational rehabilitation case specialist informed relator on August 26, 2013, that she was not a feasible candidate for vocational rehabilitation services. Relator appealed the MCO's determination, and on September 19, 2013, the bureau upheld the closure of relator's vocational rehabilitation for non-feasibility. Relator appealed the bureau's order and, following a hearing, a district hearing officer ("DHO") issued an order on October 22, 2013 denying relator's vocational rehabilitation referral request. The DHO found it improbable that relator would return to work as a result of vocational rehabilitation services, and thus concluded that relator was not a feasible candidate for such services.

{¶ 5}    Relator filed an application for PTD compensation on December 20, 2013. Following a July 18, 2014 hearing, the SHO issued an order denying relator's PTD application. The SHO relied on an April 1, 2014 report from James J. Powers, M.D., which concluded that relator had a 15 percent whole body impairment from her industrial injury and that she was capable of performing sedentary work.

{¶ 6}    The SHO addressed the nonmedical factors, including relator's age of 64, her high school education, and her work history. The SHO noted that relator had experience working as a store manager for a carry-out, a school bus driver, a cook, and doing piece work assembling electric parts. The SHO thus concluded that relator had "a

varied work history with some of that work in the light and possibly sedentary categories (sit-down piece work)," and further concluded that "[t]he ability to follow directions as a cook and a bus driver, the ability to work with the public as a bus driver, and the responsibilities involved in managing a store all suggest transferrable work skills. The [SHO] therefore concludes the Injured Worker's vocational history is a vocational asset." (July 18, 2014 SHO Decision.) The SHO also stated that, while relator had "not participated in a rehabilitation program or indicated any effort to obtain training," the DHO's October 22, 2013 order denying relator vocational rehabilitation services did not "necessitate a finding of permanent total disability." (July 18, 2014 SHO Decision.)

{¶ 7} Relator has filed the following objections to the magistrate's decision:

(1) The Magistrate erred by finding there was no abuse of discretion on the part of the Commission when it incorrectly determined Barnett never made "*any* effort to obtain training to positions consistent with her restrictions" and failed to accept the prior findings from the Commission itself on the issue of vocational rehabilitation.

(2) The Magistrate erred by finding no abuse of discretion in regards to the Commission's failure to comply with [*State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991)] as well as its failure [to] identify any "transferrable skills" when conducting its nonmedical analysis.

{¶ 8} Pursuant to Civ.R. 53(D)(4)(d), we undertake an independent review of the objected matters "to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." A relator seeking a writ of mandamus must establish: " '(1) a clear legal right to the relief prayed for, (2) a clear legal duty upon respondent to perform the act requested, and (3) that relator has no plain and adequate remedy in the ordinary course of the law.' " *Kinsey v. Bd. of Trustees of the Police & Firemen's Disability & Pension Fund of Ohio*, 49 Ohio St.3d 224, 225 (1990), quoting *State ex rel. Consolidated Rail Corp. v. Gorman*, 70 Ohio St.2d 274, 275 (1982). "A clear legal right exists where the [commission] abuses its discretion by entering an order which is not supported by 'some evidence.' " *Id.*

{¶ 9} This court will not determine that the commission abused its discretion when there is some evidence in the record to support the commission's finding. *State ex rel. Rouch v. Eagle Tool & Mach. Co.*, 26 Ohio St.3d 197, 198 (1986). The some evidence

standard "reflects the established principle that the commission is in the best position to determine the weight and credibility of the evidence and disputed facts." *State ex rel. Woolum v. Indus. Comm.,* 10th Dist. No. 02AP-780, 2003-Ohio-3336, ¶ 4, citing *State ex rel. Pavis v. Gen. Motors Corp., B.O.C. Group,* 65 Ohio St.3d 30, 33 (1992).

{¶ 10} The relevant inquiry in a determination of PTD is the claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.,* 69 Ohio St.3d 693 (1994); Ohio Adm.Code 4121-3-34(B)(1). An individual can engage in sustained remunerative employment if they can perform sedentary work. Dr. Powers' April 1, 2014 report found relator capable of performing sedentary work. Regarding the vocational factors, the SHO noted that relator's age alone was not a barrier to re-employment, that her high school education and ability to read, write, and perform basic math were assets to reemployment, and that her work history was a vocational asset. It is well-settled that the commission is the expert on the vocational or nonmedical factors in a PTD determination. *State ex rel. Jackson v. Indus. Comm.,* 79 Ohio St.3d 266, 270-71 (1997). The SHO thus concluded that, given relator's "education and work history and the finding that the Injured Worker is capable of sedentary work," relator was not entitled to PTD compensation. (July 18, 2014 SHO Decision.)

{¶ 11} Relator's objections to the magistrate's decision essentially reargue the issues which the magistrate previously considered and rejected. Relator first contends that the magistrate erred by finding that the SHO's incorrect statement regarding relator's willingness to participate in vocational rehabilitation did not require this court to issue a writ of mandamus. The magistrate acknowledged that the SHO's statement regarding relator's unwillingness to participate in vocational rehabilitation was incorrect. However, after reviewing pertinent case law, the magistrate concluded that the SHO's incorrect statement could be easily separated from the remainder of the nonmedical analysis. Indeed, no other paragraph in the SHO's order contains any discussion of relator's efforts towards vocational rehabilitation, and the SHO's denial of PTD was not based on relator's failure to participate in vocational rehabilitation. Rather, the SHO relied on Dr. Powers' medical report and the SHO's own analysis of the nonmedical factors to conclude that relator was capable of performing sustained remunerative employment.

{¶ 12} We find no error in the magistrate's conclusion that the SHO's incorrect statement regarding relator's willingness to participate in vocational rehabilitation was severable from the rest of the SHO's order, and thus did not necessitate the issuance of a writ of mandamus. *See State ex rel. Retar v. Indus. Comm.*, 10th Dist. No. 08AP-856, 2009-Ohio-5669, ¶ 37-39; *Domjancic* at 695. Relator's first objection is overruled.

{¶ 13} Relator's second objection asserts that the magistrate erred by concluding that the SHO's order did not violate *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991). Relator contends that the SHO's order violates *Noll*, as the SHO concluded that relator's varied work history suggested transferable skills, but failed to particularly identify those transferrable skills. The magistrate concluded that, even if some of relator's skills were arguably not transferable work skills, as they were skills which would have pre-existed the job being performed, the commission did not abuse its discretion by articulating the abilities relator had demonstrated through her work history.

{¶ 14} In *Noll,* the court held that in each commission order granting or denying benefits to a claimant, the commission "must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision. An order of the commission should make it readily apparent from the four corners of the decision that there is some evidence supporting it." *Id.* at 206. *See also State ex rel. LeVan v. Young's Shell Service*, 80 Ohio St.3d 55, 57 (1997). Notably, however, while the "absence of transferable skills is germane" to the inquiry into a claimant's current and future abilities to perform sustained remunerative employment, the "lack of transferable skills also does not mandate a permanent total disability compensation award." *State ex rel. Ewart v. Indus. Comm.*, 76 Ohio St.3d 139, 142 (1996). *See also* Ohio Adm.Code 4121-3-34(B)(3)(c)(iv)-(v). As such, the SHO's failure to particularly identify transferable skills does not entitle relator to an award of PTD. The SHO did not abuse its discretion in viewing relator's work history as a vocational asset. We find no error in the magistrate's decision. Relator's second objection is overruled.

{¶ 15} Following independent review, pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact

and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the request for a writ of mandamus.

*Objections overruled; writ denied.*

BROWN, P.J. and KLATT, J., concur.

_____

# A P P E N D I X

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Betty J. Barnett, | : | |
| Relator, | : | |
| v. | : | No. 14AP-628 |
| Industrial Commission of Ohio and Columbus Schools, Columbus Board of Education, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

---

### M A G I S T R A T E ' S   D E C I S I O N

### Rendered on April 30, 2015

---

*Connor, Evans & Hafenstein, LLP, Katie W. Kimmet, Kenneth S. Hafenstein* and *Nicole E. Rager,* for relator.

*Michael DeWine*, Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

---

### IN MANDAMUS

{¶ 16} In this original action, relator, Betty J. Barnett, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying her permanent total disability ("PTD") compensation, and to enter an order awarding the compensation.

<u>Findings of Fact</u>:

{¶ 17} 1. On August 19, 2011, relator injured her lower back while employed as a bus driver for respondent Columbus Schools, Columbus Board of Education. On that date, relator slipped and fell down the bus stairs, landing on her tailbone.

{¶ 18} 2. The industrial claim (No. 11-345090) is allowed for:

> Fracture lumbar vertebra closed; lumbar disc protrusion L2-L3; substantial aggravation of pre-existing lumbar spinal stenosis L2-L3; lumbar facet arthropathy L4-5; substantial aggravation of pre-existing lumbar spondylolisthesis L4-5; substantial aggravation of pre-existing facet arthropathy at L2-L3.

{¶ 19} 3. Relator has not worked since the date of her industrial injury. She began receiving temporary total disability ("TTD") compensation.

{¶ 20} 4. On July 25, 2013, at the request of the Ohio Bureau of Workers' Compensation ("bureau"), relator was examined by Denise L. Davis, M.D. In her four-page narrative report, Dr. Davis opined:

> In my medical opinion, there currently are no additional diagnostic or treatment services consistent with nationally accepted treatment guidelines such as The Official Disability Guidelines that should be considered. It is my medical opinion that there is no further treatment that will afford her a significant fundamental, functional, or physiological change.
>
> * * *
>
> In my medical opinion, the injured worker is not capable of any level of work because she has too much pain and dysfunction to tolerate even sedentary level.
>
> * * *
>
> In my medical opinion, the injured worker is MMI and a re-examination is not necessary.
>
> * * *
>
> Vocational rehabilitation is not appropriate from a medical perspective because, in my medical opinion, the injured worker is MMI.

{¶ 21} 5. On August 1, 2013, citing the report of Dr. Davis, the bureau moved to terminate TTD compensation on grounds that the industrial injury has reached maximum medical improvement ("MMI").

{¶ 22} 6. On August 22, 2013, treating physician Steven Tanzer, D.O., completed a form captioned "Physician's Report of Work Ability." The bureau designates the form as the Medco-14.

{¶ 23} In response to a preprinted query, Dr. Tanzer indicated by his mark that the industrial injury had reached MMI.

{¶ 24} The Medco-14 also asks the treating physician: "Is the injured worker a candidate for a vocational rehabilitation services focusing on return to work?" Thereafter, the treating physician is invited to mark either a "yes" or "no" box. Dr. Tanzer failed to mark either box.

{¶ 25} The Medco-14 asks the treating physician: "How many total hours is this injured worker potentially able to work?" In the space provided, Dr. Tanzer entered a zero.

{¶ 26} The Medco-14 also asks the treating physician to list the work-related conditions and then asks: "Is the condition causing temporary total disability?" In response, Dr. Tanzer marked the "yes" box indicating temporary total disability.

{¶ 27} 7. Following an August 23, 2013 hearing, a district hearing officer ("DHO") issued an order terminating TTD compensation effective the date of the hearing based upon a finding that the industrial injury has reached MMI. The DHO's order states reliance upon the report of Dr. Davis.

{¶ 28} 8. Relator filed an administrative appeal from the DHO's order of August 23, 2013.

{¶ 29} 9. On October 2, 2013, a staff hearing officer ("SHO") held a hearing on relator's administrative appeal of the DHO's order of August 23, 2013. Thereafter, the SHO issued an order stating that, prior to the hearing, relator had withdrawn her appeal and therefore the DHO's order of August 23, 2013 "remains in full force and effect."

{¶ 30} 10. Earlier, there was a referral to the bureau's vocational rehabilitation program.

{¶ 31} 11. On August 26, 2013, the bureau mailed an order: "You are eligible for vocational rehabilitation because you are receiving compensation. Your MCO will let you know if they are referring you to it."

{¶ 32} 12. By letter dated August 26, 2013, from a MCO vocational rehabilitation case specialist, relator was informed:

> You have been referred for consideration of vocational rehabilitation services and our records indicate that you have been determined eligible for these services by BWC. As your managed care organization, we have reviewed your file and determined that you are currently not ready for vocational rehabilitation services at this time for the following reason:
>
> **You are not feasible, as the current lack of employment is not due to your allowed diagnosis. As such, services through the Ohio BWC are neither necessary nor appropriate at this time.**
>
> Once we have received a medical update indicating that this has been resolved, your file will again be reviewed to be sure that you are still eligible for vocational rehabilitation services and that you are capable of participating in such services. You may be contacted at that time to determine your interest.

(Emphasis sic.)

{¶ 33} 13. Relator, through counsel, administratively appealed the August 26, 2013 decision of the MCO that determined that relator is not feasible for vocational rehabilitation.

{¶ 34} 14. Thereafter, a MCO vocational rehabilitation specialist, Ron Janetzke, wrote:

> CareWorks has determined that the closure cannot be overturned. The [Injured Worker] was found to be MMI per the DHO hearing on 8/23/13. The [physician of record] submitted a Medco-14 dated 8/22/13 which has documented that the [Injured Worker] remains temporarily totally disabled and is MMI as of 7/15/13. The progress note from Khaled Amr, M.D. (pain management provider) documents that the [Injured Worker] continues to suffer from chronic severe back pain with numbness and tingling in the lower extremities and has a pain level of 6/10. Based on this information there are no VocRehab services that would be

appropriate to offer the [Injured Worker]. The [Injured Worker] is not a feasible candidate.

{¶ 35} 15. On September 18, 2013, John Finch, Ph.D., wrote for the MCO:

In this reviewer's opinion, the closure of this case for non feasibility should be upheld.

Rationale:

[One] The above referenced injured worker's rehabilitation case was determined to be non-feasible on 8/26/13 due to current lack of employment not due to allowed diagnosis. Services through Ohio BWC are neither necessary nor appropriate at this time.

[Two] The [attorney of record] appealed the determination on 9/4/13.

[Three] Review of the file indicates the claimant was determined MMI per DHO hearing on 8/23/13. [physician of record] submitted Medco-14 on 8/22/13 with injured worker temporarily totally disabled as of 7/15/13. Progress note from Dr. Amr on 9/4/13 says claimant continues to have significant chronic back pain with tingling and numbness to lower extremities. Information also indicated claimant has retired from employer in August, 2011.

[Four] Claimant is not released to [return to work] per Medco-14 as required by BWC Chapter 4. Claimant also is dealing with severe chronic pain. Claimant has also retired from employer, indicating lack of employment is not due to allowed claim. In my opinion the correct non-feasibility decision was made in this case, consistent with BWC Chapter 4 guidelines.

{¶ 36} 16. On September 19, 2013, the bureau mailed the following decision:

Reconsideration of MCO decision dated 8/26/13 for non-feasibility of vocational rehabilitation services.

BWC disallows the treatment/services.

The closure of vocational rehabilitation for non-feasibility should be upheld, per peer review of John Finch, Ph.D., CRC, LPC dated 9/18/13. Claimant is not released to return to work per Medco-14 as required by BWC Chapter 4. Claimant

> also is dealing with severe chronic pain. Claimant has also retired from employer, indicating lack of employment is not due to allowed claim. The correct non-feasibility decision was made in this case, consistent with BWC Chapter 4 guidelines.
>
> BWC based this decision on consideration of all submitted medical documentation, the allowed conditions in the claim, approved treatment guidelines, BWC policy, and workers' compensation law, including, but not limited to, the Miller criteria (Ohio Administrative Code 4123-6-16.2(B)(1) through (B)(3)), as follows:
>
> BWC Chapter 4 Guidelines, OAC 4123-18-02 and OAC 4123-18-05.

{¶ 37} 17. On September 25, 2013, relator administratively appealed the September 19, 2013 order of the bureau.

{¶ 38} 18. Following an October 18, 2013 hearing, a DHO mailed an order on October 22, 2013, stating:

> The order of the Administrator, issued 09/19/2013, is modified.
>
> It is the order of the District Hearing Officer that the Injured Worker's vocational rehabilitation referral request filed 08/06/2013 is denied.
>
> The District Hearing Officer hereby affirms the Bureau of Workers' Compensation's decision to close the Injured Worker's vocational rehabilitation file, although the District Hearing Officer does not rely on all the same grounds relied upon in the Bureau of Workers' Compensation's order. The District Hearing Officer finds that the Injured Worker is not a feasible candidate for Vocational Rehabilitation Services at this time because the District Hearing Officer is not persuaded that there is a reasonable probability that the Injured Worker will benefit from Vocational Rehabilitation Services and return to work as a result of those services.
>
> This order is based on Ohio Administrative Code Section 4123-18-03, and the rationale contained in the 07/25/2013 report of Dr. Davis, Mr. Finch's 09/18/2013 report and Mr. Janetzke's 09/12/2013 report (however, the District Hearing Officer does not rely on the alleged ground of the Injured Worker's retirement, based on the Injured Worker's

statement at hearing that what she is receiving is School Employees Retirement System disability).

{¶ 39} 19. Apparently, the October 18, 2013 order of the DHO was not administratively appealed.

{¶ 40} 20. On October 22, 2013, Dr. Tanzer wrote:

> I feel that this patient should be considered permanently and totally disabled due to the above claim injury, and that she is unable to return to gainful employment with her back injury, as agreed to by both independent evaluators as well as the Bureau's evaluator, feeling that this patient is unable to return to work; any type of gainful employment due to this injury. She suffers from chronic pain and disability secondary to it. She has altered functions of daily living. She has to require chronic pain medicine for use and functioning.
>
> This patient, due to her age and physical condition, is really unable to return to any type of gainful employment.

{¶ 41} 21. On December 20, 2013, relator filed an application for PTD compensation.

{¶ 42} 22. On February 19, 2014, at the employer's request, relator was examined by Rohn T. Kennington, M.D. In his four-page narrative report, Dr. Kennington opined:

> It is my medical opinion, based on a reasonable degree of medical certainty, and on the allowed conditions of the claim (Claim#11-345090), that Mrs. Barnett is not permanently and totally disabled * * * while she is not capable of returning to her former employment as a bus driver for the Columbus city schools, this should not preclude her from remunerative employment in a light capacity job with the above listed restrictions.

{¶ 43} 23. On March 25, 2014, at the commission's request, relator was examined by James J. Powers, M.D. In his four-page narrative report dated April 1, 2014, Dr. Powers opines:

> We come to a total of 15% whole body impairment for the injuries suffered by the Injured Worker on 08/19/2011.
>
> * * *

> The Injured Worker is exhibiting significant deconditioning. She has multilevel involvement. I would see her being able to do sedentary work.

{¶ 44} 24. Following a July 18, 2014 hearing, an SHO issued an order denying the PTD application. The SHO's order explains:

> It is the order of the Staff Hearing Officer that the IC-2, Application for Permanent Total Disability Compensation, filed 12/20/2013 is denied. The Staff Hearing Officer finds the residual impairment from the allowed conditions, when combined with the Injured Worker's vocational factors, do not remove her from all sustained remunerative employment.
>
> The Injured Worker was injured on 08/19/2011 when she fell from her school bus. She has not worked since the date of injury. The Injured Worker underwent a lumbar vertebroplasty on 12/07/2011. Treatment thereafter has consisted of medial branch blocks, epidural steroid injections, radiofrequency ablations, and the use of prescription medications.
>
> Relying upon the opinion from James Powers, M.D. dated 04/01/2014, the Staff Hearing Officer finds the allowed conditions prevent the Injured Worker from returning to her former position of employment as a school bus driver. Dr. Powers opined that the allowed conditions represent a 15% permanent partial impairment and restrict the Injured Worker to sedentary occupations. Dr. Powers' opinion was found persuasive.
>
> The Injured Worker is 63 years old. While she is near the typical age of retirement, age alone is not a barrier to re-employment and cannot be the sole basis for permanent total disability compensation. The Injured Worker is a high school graduate and she indicated on her application that she can read, write, and perform basic math. The Staff Hearing Officer finds the Injured Worker's education is a vocational asset for re-employment.
>
> Regarding her work history, the Injured Worker listed on her application two occupations. From 1989 to 1994 she was a store manager for a carry-out. She indicated on the application that her duties were banking and placing orders. The application further indicates that the Injured Worker was a school bus driver from 1994 to 2011. When questioned

at today's hearing regarding the gaps in her employment history, the Injured Worker stated that she was unaware that she had to detail her complete work history. The Injured Worker indicated that she also worked for approximately two years doing piece work, which she described as a sit down job assembling electric parts. The Injured Worker also stated that she worked for MCL Cafeteria as a cook for approximately seven years. Regarding the store manager position, the Injured Worker testified that her husband owned two carry-outs and that she worked in one of them. While on the application she indicated that she was responsible for banking and placing orders, at today's hearing the Injured Worker testified that her husband did most of these duties and that she manned the store. The Staff Hearing Officer concludes the Injured Worker has a varied work history with some of that work in the light and possibly sedentary categories (sit-down piece work). The ability to follow directions as a cook and a bus driver, the ability to work with the public as a bus driver, and the responsibilities involved in managing a store all suggest transferrable work skills. The Staff Hearing Officer therefore concludes the Injured Worker's vocational history is a vocational asset.

The Injured Worker has not participated in a rehabilitation program or indicated any effort to obtain training to positions consistent with her restrictions. The Staff Hearing Officer reviewed the District Hearing Officer order issued 10/22/2013, which denied vocational rehabilitation services. This order made the finding that the Injured Worker would not benefit from services. This finding, however, does not necessitate a finding of permanent total disability.

Given the Injured Worker's education and work history and the finding that the Injured Worker is capable of sedentary work, the Staff Hearing Officer finds the allowed conditions have not rendered the Injured Worker permanently and totally disabled. There are positions as clerks and dispatchers that are in the sedentary strength range that would be similar to prior positions in the Injured Worker's work history.

{¶ 45} 25. On August 13, 2014, relator, Betty J. Barnett, filed this mandamus action.

Conclusions of Law:

{¶ 46} Two issues are presented:  (1) whether the paragraph of the SHO's order of July 18, 2014 containing findings regarding an alleged failure to participate in vocational rehabilitation constitutes an abuse of discretion such that a writ of mandamus must issue; (2) whether the commission abused its discretion in its consideration of relator's work history.

### First Issue

{¶ 47} Turning to the first issue, the Supreme Court of Ohio has repeatedly addressed the obligation of a PTD claimant to undergo opportunities for rehabilitation. *State ex rel. B.F. Goodrich Co. v. Indus. Comm.*, 73 Ohio St.3d 525 (1995); *State ex rel. Bowling v. Natl. Can Corp.*, 77 Ohio St.3d 148 (1996); *State ex rel. Wood v. Indus. Comm.*, 78 Ohio St.3d 414 (1997); *State ex rel. Wilson v. Indus. Comm.*, 80 Ohio St.3d 250 (1997); *State ex rel. Cunningham v. Indus. Comm.*, 91 Ohio St.3d 261 (2001).

{¶ 48} Here, in the second to the last paragraph of the order (as quoted above), the SHO states:

> The Injured Worker has not participated in a rehabilitation program or indicated any effort to obtain training to positions consistent with her restrictions. The Staff Hearing Officer reviewed the District Hearing Officer order issued 10/22/2013, which denied vocational rehabilitation services. This order made the finding that the Injured Worker' would not benefit from services. This finding, however, does not necessitate a finding of permanent total disability.

{¶ 49} With respect to the first sentence of the paragraph at issue, it is indeed undisputed that relator has not participated in a rehabilitation program.  However, the record belies the remaining part of the sentence.  That is, the SHO was incorrect to state that relator has not "indicated *any* effort to obtain training to positions consistent with her restrictions."  (Emphasis added.)  That statement simply ignores that relator, through her counsel, repeatedly sought to be declared feasible for participation in vocational rehabilitation services.  Relator's requests to be determined feasible were repeatedly denied, albeit for the reasons set forth in the DHO's order of October 18, 2013.

{¶ 50} While the paragraph of the SHO's order of July 18, 2014 at issue concludes with the legally correct finding that the DHO's order of October 18, 2013 (mailed October 22, 2013) "does not necessitate a finding of permanent total disability" it is not entirely

clear as to what extent, if any, the SHO held the incorrect finding or statement against relator's PTD application. That is, the question here is whether the flawed paragraph of the order requires this court to issue a limited writ of mandamus for a new determination of relator's PTD application absent any further consideration of the vocational rehabilitation factor.

{¶ 51} In *State ex rel. Slater v. Indus. Comm.,* 10th Dist. No. 06AP-1137, 2007-Ohio-4413, this court determined that the commission abused its discretion in its denial of PTD compensation by holding the claimant, Glenn O. Slater, accountable for his failure to explore vocational rehabilitation and training when medical evidence indicated that Slater had undergone chemotherapy and a tracheostomy for treatment of his nonindustrial carcinoma. Specifically, in violation of *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991), the commission held Slater accountable for his failure to pursue vocational rehabilitation absent any reasoning supported by some evidence.

{¶ 52} In *Slater*, this court issued a writ of mandamus ordering the commission to issue a new order that adjudicates the PTD application.

{¶ 53} In *Slater,* this court, through its magistrate, distinguished this court's decision in *State ex rel. Searles v. Indus. Comm.,* 10th Dist. No. 01AP-970, 2002-Ohio-3097, affirmed 98 Ohio St.3d 390, 2003-Ohio-1493.

{¶ 54} In *Searles,* this court states:

> The commission may state separate, alternative grounds for denial of PTD. *State ex rel. Speelman v. Indus. Comm.* (1992), 73 Ohio App.3d 757, * * *. If the commission does choose to use alternative grounds, "those grounds should not be merged together and should be explained separately so that a reviewing court can understand what has been done." Id. at 761, * * *. The commission's decision, in separate paragraphs, details the grounds utilized to deny relator's PTD application. One basis for the denial of PTD was relator's failure to participate in rehabilitation. But the commission also focused on factors that would be assets for relator in obtaining employment. Although the commission did not expressly state that these were all separate reasons for denial, the decision did explain the grounds separately, thereby allowing this court to properly review that decision.
>
> Even if the commission improperly weighed relator's failure to participate in rehabilitation, we find that there was other

> evidence in the record to support the commission's decision to deny relator's PTD application.

*Id.* at ¶ 5-6.

In *Slater,* this court, through its magistrate, distinguished *Searles*:

> Unlike the situation in *Searles,* the SHO's order here does not address the failure to pursue vocational rehabilitation in a separate paragraph. Actually, the SHO points to the failure to pursue vocational rehabilitation in the two key paragraphs in which the other nonmedical factors such as age, education and work history are addressed. That is, the SHO's finding of a failure to pursue vocational rehabilitation is intertwined with the analysis of the other nonmedical factors.

*Id.* at ¶ 44.

{¶ 55} In *State ex rel. Retar v. Indus. Comm.*, 10th Dist. No. 08AP-856, 2009-Ohio-5669, despite the commission's flawed determination regarding vocational rehabilitation, this court, through its magistrate, determined that the commission's flawed determination can be separated from the remainder of the nonmedical analysis. The magistrate's order, as adopted by the court, states:

> Relator's alleged failure to participate in vocational rehabilitation is largely irrelevant to the commission's finding that relator "retains the functional capacity to be trained to perform work within the sedentary classification."

*Id.* at ¶ 39

{¶ 56} In *State ex rel. Barfield v. Indus. Comm.*, 10th Dist. No. 10AP-61, 2010-Ohio-5552, this court was again confronted with a commission order denying PTD compensation that contained improper statements regarding the claimant's efforts toward vocational rehabilitation. Finding that the improper statements required this court to issue a limited writ, this court explains:

> The staff hearing officer in this case "bookends" her decision with a reference to vocational rehabilitation. Moreover, in the summary paragraph that explains the decision, the staff hearing officer first concludes relator "retains the physical functional capacity to perform sedentary employment activities which require limited use of the right hand and which are low stress activities." Acknowledging relator "has restrictions," the staff hearing officer in the same paragraph follows with the statement that relator "made no effort in the

> 13 years since she last worked to participate in a program of rehabilitation designed to enhance or improve her ability to return to the work force." (Mag. Dec., ¶ 26.) In light of such a paragraph, we are compelled to conclude the staff hearing officer's erroneous analysis of the vocational rehabilitation issue is so intertwined with the analysis of the medical and nonmedical factors that we must grant a limited writ and return this matter to the commission to consider relator's application for permanent total disability compensation without at the same time considering that she did not engage in vocational rehabilitation.

*Id.* at ¶ 7.

{¶ 57} Here, applying the case law, the magistrate finds that the incorrect statement in the SHO's order regarding an alleged failure of relator to "indicate any effort to obtain training" does not require this court to issue a writ of mandamus.

{¶ 58} No other paragraphs of the SHO's order, other than the one at issue, contain any discussion of relator's efforts towards vocational rehabilitation.  The incorrect statement can easily be separated from the SHO's analysis in the remainder of the paragraphs.  The incorrect statement is not intertwined with the SHO's main analysis of the non-medical factors.

## Second Issue

{¶ 59} The second issue, as previously noted, is whether the commission abused its discretion when it considered relator's work history.

{¶ 60} In challenging the commission's review of relator's work history, relator sets forth four cases in which the Supreme Court of Ohio determined that the commission's consideration of the PTD applicant's work history violated *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 61} In chronological order, those cases are *State ex rel. Rhoten v. Indus. Comm.*, 77 Ohio St.3d 8 (1996), *State ex rel. Bruner v. Indus. Comm.,* 77 Ohio St.3d 243 (1997), *State ex rel. Pierce v. Indus. Comm.*, 77 Ohio St.3d 275 (1997), *State ex rel. LeVan v. Young's Shell Serv.*, 80 Ohio St.3d 55 (1997).

{¶ 62} *In Rhoten,* the court states:

Two assumptions by the commission further undermine its analysis. The first is that every job produces some transferable skill. The second is that this claimant's prior jobs left her with skills transferable to sedentary work.

The commission's first assumption ignores the plethora of unskilled jobs in the workplace. The second ignores that none of claimant's jobs had been sedentary. It is thus unclear how claimant's jobs would yield sedentary skills.

The commission could, of course, have facilitated review by identifying these perceived "skills." Under similar circumstances, the court in *State ex rel. Haddix v. Indus. Comm.*, 70 Ohio St.3d 59, 61 (1994), held:

The commission determined that claimant's prior work as a gas station attendant and press operator provided him with skills transferable to sedentary employment. The commission's order, however, does not identify what those skills are. Such elaboration is critical in this case, since common sense suggests that neither prior work is, in and of itself, sedentary.

*Id.* at 11.

{¶ 63} In *Bruner,* the court states:

We are disturbed by the increasing frequency with which the commission has denied permanent total disability compensation based on "transferable skills" that the commission refuses to identify. This lack of specificity is even more troubling when those "skills" are derived from traditionally unskilled jobs.

*Id.* at 245.

{¶ 64} In *Pierce,* the court states:

The commission's discussion of claimant's work history is also inadequate. With increasing, and disturbing, frequency we are finding that no matter what claimant's employment background is, the commission finds skills-almost always unidentified-that are allegedly transferable to sedentary work. In some cases, depending on the claimant's background, these skills are self-evident. In many cases, they are not.

* * *

> The present claimant was an ironworker-a position that is
> neither sedentary nor light duty. Again, however, the
> commission found skills transferable to light work, without
> specifying what those skills were. The reference to
> supervisory skills, without more, is not enough in this case,
> given claimant's tenure as a working, as opposed to purely
> administrative, supervisor.

*Id.* at 277-78.

{¶ 65} In *Levan,* the court states that "[a]t issue is the commission's non-medical analysis which we find to be deficient in two respects."  Only the first issue is pertinent here:

> The first involves the commission's treatment of claimant's
> work history, which is little more than a recitation of
> claimant's past jobs. The commission's attempt to add a
> substantive dimension to this recitation by using the phrases
> "wide and varied" and "flexibility and adaptability" fails.
> Such hollow phrases are reminiscent of the boilerplate
> previously decried in *Noll,* and simply restate what the
> earlier recitation had already revealed-that claimant had
> worked many jobs prior to injury. These phrases do not
> explain how claimant's occupational history enhances his
> reemployment potential.

*Id.* at 57.

{¶ 66} Here, relator contends that the commission found skills transferable to sedentary work without specifying what those skills are.  Relator also contends that the commission's use of the term "varied work history" in the SHO's order of July 18, 2014 is akin to the commission's use of the term "wide and varied" which the court found to be "hollow" in *Levan. Id.* at 57.

{¶ 67} The magistrate disagrees with relator's contention that any of the four cited cases require this court to issue a writ of mandamus.

{¶ 68} Ohio Adm.Code 4121-3-34 sets forth the commission's rules applicable to the adjudication of PTD applications.

{¶ 69} Ohio Adm.Code 4121-3-34(B) sets forth definitions.

{¶ 70} Ohio Adm.Code 4121-3-34(B)(3) is captioned "Vocational factors."

{¶ 71} Ohio Adm.Code 4121-3-34(B)(3)(c) is captioned "Work experience."

{¶ 72} Thereunder, the code provides:

(iv) "Transferability of skills" are skills that can be used in other work activities. Transferability will depend upon the similarity of occupational work activities that have been performed by the injured worker. Skills which an individual has obtained through working at past relevant work may qualify individuals for some other type of employment.

(v) "Previous work experience" is to include the injured worker's usual occupation, other past occupations, and the skills and abilities acquired through past employment which demonstrate the type of work the injured worker may be able to perform. Evidence may show that an injured worker has the training or past work experience which enables the injured worker to engage in sustained remunerative employment in another occupation. The relevance and transferability of previous work skills are to be addressed by the adjudicator.

{¶ 73} At issue here, is the following portion of the SHO's order:

The Staff Hearing Officer concludes the Injured Worker has a varied work history with some of that work in the light and possibly sedentary categories (sit-down piece work). The ability to follow directions as a cook and a bus driver, the ability to work with the public as a bus driver, and the responsibilities involved in managing a store all suggest transferrable work skills. The Staff Hearing Officer therefore concludes the Injured Worker's vocational history is a vocational asset.

{¶ 74} The ability to follow directions, the ability to work with the public, and the responsibilities involved in managing a store are arguably not transferrable work skills. While those identified abilities may have been enhanced during the work history, ordinarily those work abilities would have pre-existed the job being performed. Therefore, those abilities are arguably not transferrable work skills because they were probably not "obtained through working" as indicated at Ohio Adm.Code 4121-3-34(B)(3)(c)(iv).

{¶ 75} Nevertheless, even if it can be argued that the identified abilities are technically not transferrable work skills, it was not improper for the commission to

articulate in its order the abilities that relator has demonstrated during her work history, especially when those abilities can assist relator in the performance of another job.

{¶ 76} Instructive here is *State ex rel. Ewart v. Indus. Comm.*, 76 Ohio St.3d 139 (1996), wherein the court states:

> The freedom to independently evaluate nonmedical factors is important because nonmedical factors are often subject to different interpretation.
>
> * * *
>
> The same can be said in this case with regard to claimant's work history. Claimant worked for Refiners Transport and Terminal as a trucker for twenty-two years. Claimant's long tenure can be viewed negatively because it prevented the acquisition of a broader range of skills that more varied employment might have provided. It also, however, suggests a stable, loyal and dependable employee worth making an investment in. This is an asset and is an interpretation as valid as the first.

*Id.* at 141-42.

{¶ 77} The *Ewart* court also states that a "lack of transferrable skills * * * does not mandate a permanent total disability award." *Id.* at 142.

{¶ 78} Based upon the above analysis, the magistrate does not find an abuse of discretion in the commission's consideration of relator's work history.

{¶ 79} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or

> legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).