[Cite as *State ex rel. Gwiazda v. Indus. Comm.*, 2016-Ohio-5153.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Stephen J. Gwiazda, | : | |
| Relator, | : | |
| v. | : | No. 15AP-882 |
| Industrial Commission of Ohio and ABC Distribution Company, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on July 28, 2016

*Nager, Romaine & Schneiberg Co. L.P.A.*, *Jerald A. Schneiberg, Jennifer L.* Lawther, and *Corey J. Kuzma*, for relator.

*Michael DeWine*, Attorney General, and *Eric J. Tarbox*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

SADLER, J.

{¶ 1} Relator, Stephen J. Gwiazda, brings this original action seeking a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its May 1, 2015 order denying relator's motion for a total loss of use award and ordering the commission to find that he is entitled to a total loss of use award for his left lower extremity.

{¶ 2}   Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who rendered a decision and recommendation that includes findings of fact and conclusions of law, which is appended hereto.  Therein, the magistrate concluded the commission did not abuse its discretion in denying relator's motion for the total loss of use award.

{¶ 3}   In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief.  *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).  A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.  *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986).

{¶ 4}   Relator sets forth the following objection to the magistrate's decision:

> The Magistrate erred in denying Relator's request for a writ of mandamus by relying on the Staff Hearing Officer Order of May 1, 2015.

{¶ 5}   The magistrate found that relator sustained a work-related injury on February 5, 2009, when he was pinned between a tow-motor and a truck.  On October 28, 2014, the commission granted relator's application for permanent total disability compensation.  Relator subsequently filed a C-86 motion requesting a loss of use award for his left lower extremity.  Relator supported his motion with the March 4, 2015 report from his treating physician, Todd S. Hochman, M.D., who opined that "for all intents and purposes, lost complete functional use of his left lower extremity as a result of his February 5, 2009, work accident."  Teresa Kay Larsen, D.O., performed an independent medical examination of relator, and she issued a report on January 30, 2015.  Dr. Larsen's report concludes as follows: "While there is partial impairment of the left lower limb, there is not a total loss of use of the left lower limb in this individual."

{¶ 6}   In denying relator's motion, the commission relied on Dr. Larsen's report and the decision of the Supreme Court of Ohio in *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166.  In his objection, relator contends that the

magistrate's decision is "inconsistent with the standard set forth in *Alcoa*." (Obj. to Mag. Decision at 4.) We disagree.

{¶ 7} In *Alcoa*, the Supreme Court established that in a non-amputation loss of use case, the inquiry is whether the injured worker has suffered the permanent loss of use of the injured body part for all practical intents and purposes. The magistrate concluded that Dr. Larsen's report provided some evidence to support the commission's finding that relator did not sustain a permanent loss of use of the left lower extremity for all practical intents and purposes. In reaching this conclusion, the magistrate made the following observations regarding Dr. Larsen's report:

> Dr. Larsen found that relator had full knee and ankle extension and flexion, had the ability to activate and use his left knee, ankle and foot, had partial ability to use his left hip flexors, and had a lack of thigh/leg muscle atrophy. Further, Dr. Larsen noted that, on indirect examination, relator shifted his weight through the left hip and bore weight equally at times through the left leg and foot while wearing an [ankle foot orthosis]. *The magistrate finds that Dr. Larsen did not misapply the* Alcoa *standard.*

(Emphasis added.) (Mag. Decision at ¶ 36.)

{¶ 8} Dr. Larsen also expressed disagreement with some of Dr. Hochman's findings and with his opinion regarding loss of use. Dr. Larsen's report provides, in relevant part, as follows:

> While it is noted in the report of Dr. Hochman that Mr. Gwiazda has no active flexion or extension of the hip or knee, both my examination and review of the records, as discussed in the history section of this report, reveals that he does have good knee and ankle extension and flexion although there is significant weakness of the gluteal hip girdle muscles with partial hip flexor activation. Although his performance is variable on my examination, there is definite ability to activate and use the left knee, ankle, and foot, and a partial ability to use the left hip flexors, to change positions, bear weight at times and assist during position changes, standing, and ambulation. While there is partial impairment of the left lower limb, there is not a total loss of use of the left lower limb in this individual.

(Ex. J at 3, Dec. 22, 2015 Stipulated Record.)

{¶ 9}   An appellate court will not determine that the commission abused its discretion when there is some evidence in the record to support the commission's findings.  *State ex rel. Medina v. Indus. Comm.*, 10th Dist. No. 15AP-29, 2016-Ohio-173, ¶ 11, citing *State ex rel. Rouch v. Eagle Tool & Machine Co.*, 26 Ohio St.3d 197, 198 (1986); *State ex rel. Barnett v. Indus. Comm.*, 10th Dist. No. 14AP-628, 2015-Ohio-3898, ¶ 9.  "The some evidence standard 'reflects the established principle that the commission is in the best position to determine the weight and credibility of the evidence and disputed facts.' "  *Id.*, quoting *State ex rel. Woolum v. Indus. Comm.*, 10th Dist. No. 02AP-780, 2003-Ohio-3336, ¶ 4, quoting *State ex rel. Pavis v. Gen. Motors Corp.*, 65 Ohio St.3d 30, 33 (1992).

{¶ 10} Our review of Dr. Larsen's report leads us to the same conclusion reached by the magistrate.  We find that Dr. Larsen's report evidences compliance with the *Alcoa* standard even though Dr. Larsen did not use the precise language employed in the *Alcoa* decision.  *See, e.g., State ex rel. Holderman v. Indus. Comm.*, 10th Dist. No. 12AP-32, 2012-Ohio-6022 (medical report relied on by the commission in denying loss of use award evidenced compliance with *Alcoa* standard even though the report did not use the phrase "for all practical purposes" in concluding that the injured worker had not sustained a total loss of use of her right hand).  Accordingly, we agree with the magistrate that Dr. Larsen's report constitutes "some evidence" to support the commission's determination that relator did not sustain a total loss of use of his left lower extremity, as the report indicates some functionality of relator's lower limbs.  *See State ex rel. Robinette v. Indus. Comm.*, 10th Dist. No. 12AP-502, 2013-Ohio-2453, ¶ 8 (in denying an application for loss of use of claimant's right leg, the commission did not abuse its discretion by relying on the report of an examining physician who stated that "[t]here is a distinct and significant difference between making a decision to not ambulate and actually not being able to ambulate").

{¶ 11} Following an independent review of the magistrate's decision and the objection filed by respondent, we find that the magistrate has determined the pertinent facts and properly applied the relevant law.  Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained

therein.  For the reasons set forth in the magistrate's decision and those expressed herein, relator's objection is overruled.

*Objection overruled;*
*writ of mandamus denied.*

BROWN and KLATT, JJ., concur.

_____

**A P P E N D I X**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Stephen J. Gwiazda, | : | |
| Relator, | : | |
| v. | : | No. 15AP-882 |
| Industrial Commission of Ohio and ABC Distribution Company, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

---

**M A G I S T R A T E ' S   D E C I S I O N**

**Rendered on March 25, 2016**

---

*Nager, Romaine & Schneiberg Co. L.P.A., Jerald A. Schneiberg, Jennifer L. Lawther* and *Corey J. Kuzma,* for relator.

*Michael DeWine*, Attorney General, and *Eric J. Tarbox,* for respondent Industrial Commission of Ohio.

---

IN MANDAMUS

{¶ 12} Relator, Steven J. Gwiazda, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied his motion for total loss of use of his left lower extremity, and ordering the commission to find that he is entitled to that award.

Findings of Fact:

{¶ 13} Relator sustained a work-related injury on February 5, 2009, when he was pinned between a tow-motor and a truck, and his workers' compensation claim has been allowed for the following conditions:

Open wound of left hip/thigh-complicated; fracture of sacrum, rectum injury-open; large open wound gluteal/peroneal area; perineal laceration; bilateral carpal tunnel syndrome; impotence, organic origin; sprain sacroiliac; sprain lumbar region; substantial aggravation of pre-existing degenerative joint disease left knee; traumatic arthritis left leg; tear left meniscus-current; tear left medial collateral ligament; adjustment reaction; dental caries.

{¶ 14} 2. In an order mailed October 28, 2014, the commission granted relator's application for permanent total disability ("PTD") compensation.

{¶ 15} 3. On March 27, 2015, relator filed a C-86 motion requesting a finding of loss of use left lower extremity.

{¶ 16} 4. Relator's motion was supported by the May 22, 2014 evaluation and reports from his treating physician Todd S. Hochman, M.D. Dr. Hochman noted the following physical findings upon examination:

He has extreme weakness noted throughout his left lower extremity. In fact, he had difficulty with active flexion and extension throughout his left hip. He had extreme difficulty with active flexion and extension throughout his left knee. There is some atrophy throughout the musculature in the left lower extremity. He was able to actively dorsiflex and plantar flex the left ankle. He ambulated with an antalgic gait with the assistance of a walker. When he elevated from a seated position, he was unable to do anything with his left lower extremity and was dependent on his right lower extremity. When he walks with the walker, he utilizes the walker and his right lower extremity. He uses momentum and pelvic movements in order to move his left lower extremity.

{¶ 17} In his May 22, 2014 report, Dr. Hochman opined that relator had lost the functional use of his left lower extremity, stating:

First, it must be established that Mr. Gwiazda reports that he was asymptomatic and working full duty prior to February 05, 2009. As you know, Mr. Gwiazda sustained significant injuries as the result of his February 05, 2009 work accident, and he has required numerous surgeries. Subsequent to the February 05, 2009 work injury, Mr. Gwiazda has developed a significant left lower extremity impairment. Mr. Gwiazda has essentially no active flexion or extension throughout his left knee or left hip. Mr. Gwiazda is

dependent on his right lower extremity in order to elevate from a seated position. Mr. Gwiazda ambulates with a walker and his right lower extremity, and does not utilize his left lower extremity for any purposeful part of ambulation. Mr. Gwiazda appears to use momentum and pelvic movements in order to move his left lower extremity. It is my medical opinion, within a reasonable degree of medical probably, that Mr. Steven Gwiazda has, for all intents and purposes, lost functional use of his left lower extremity as a result of his February 05, 2009 work accident.

{¶ 18} 5. An independent medical examination was performed by Teresa Kay Larsen, D.O. In her January 30, 2015 report, Dr. Larsen noted the allowed conditions in relator's claim and provided her findings on physical examination:

On physical examination, this is an alert and cooperative pleasant middle aged male in no distress. His affect is normal in range, and his body habitus is overweight. Examination of his left hip area reveals a long surgical scar from the gluteal area to the posterior thigh with significant loss of left gluteal muscle bulk. Passive range of motion of the left hip reveals normal motion in all planes. There is no thigh or leg muscle atrophy. Circumferential measurement of the left thigh is 51 cm and the right thigh is 50 cm, at 10 cm about the knees. Circumferential measurement of the calves is 36.5 cm bilaterally, at 20 cm below the tibial tuberosities. Examination of the left knee reveals full extension and flexion without discomfort. Surgical scars are not apparent. There is no joint tenderness, effusion, or instability. There are mild knee joint hypertrophic changes consistent with degenerative joint disease. Motor strength testing is limited by voluntary effort, as he initially did not perform any motion at the hip, knee, or ankle when requested. However, after discussion that it was noted that prior examiner's had documented motion and strength in these areas, he demonstrated 4/5 strength at the knee extensors, 5/5 at the ankle dorsiflexors, and brief but good strength (he was able to provide good resistance to manual muscle testing but briefly and at partial range) at the hip flexors. There was no active motion demonstrated in hip abduction or extension. Reflexes are 2/4 at the patella and achilles bilaterally. Sensation is described as diminished to light touch throughout the left lower limb circumferentially. There is trace pretibial pitting edema in the bilateral lower limbs. He is observed to use the left lower limb to push himself up

along the exam table by actively flexing the hip and flexing and extending the knee and ankle and similarly while changing positions to side lying. He ambulates with use of a walker, swinging the left leg through with touch down weight bearing on the left foot and appeared to be avoiding putting weight through the left leg on direct examination. On indirect observation as he entered the examination room and left the office, it is noted that he did shift his weight through the left hip and weight bear equally at times through the left leg and foot while wearing an AFO.

{¶ 19} Thereafter, Dr. Larsen opined that relator did not have a total loss of use of his left lower limb, stating:

Based on a reasonable degree of medical certainty, it is my opinion that the allowed injury has not resulted in the total permanent loss of use of the left lower limb such that the effected part is useless for all practical purposes. Although there is significant loss of left gluteal musculature and muscle function in regard to left hip extension and abduction and to a partial degree in hip flexion, there is functional use of the left lower limb at the knee, ankle and foot. While it is noted in the report of Dr. Hochman that Mr. Gwiazda has no active flexion or extension of the hip or knee, both my examination and review of the records, as discussed in the history section of this report, reveals that he does have good knee and ankle extension and flexion although there is significant weakness of the gluteal/hip girdle muscles with partial hip flexor activation. Although his performance is variable on my examination, there is definite ability to activate and use the left knee, ankle, and foot, and a partial ability to use the left hip flexors, to change positions, bear weight at times and assist during position changes, standing, and ambulation. While there is partial impairment of the left lower limb, there is not a total loss of use of the left lower limb in this individual.

{¶ 20} 6. The record before the commission includes the October 1, 2014 report of Eli Fink, M.D., prepared to assist the commission in its consideration of maximum medical improvement, permanent partial impairment, and PTD. Dr. Fink found that relator had significant left hip girdle weakness, that his "left knee has been asymptomatic since * * * 2010," that he "ambulates with a very forward-flexed posture * * * dragging the left leg," and that his "[q]uadriceps strength is 4+ on the left, 5 on the

right," and "[a]nkle dorsiflexion and plantar flexion strength is normal." Dr. Fink assessed a 60 percent whole person impairment for relator's hip.

{¶ 21} 7. Following the denial of the motion by a district hearing officer ("DHO"), a hearing was held before a staff hearing officer ("SHO") on April 28, 2015. The SHO relied on the report of Dr. Larsen and denied relator's motion, stating:

> The Staff Hearing Officer affirms the District Hearing Officer's **DENIAL** of the request for payment for **LOSS OF USE OF THE LEFT LOWER EXTREMITY.** This order relies on the report and opinion of Teresa Larsen, D.O. Dr. Larsen indicates that the Injured Worker appears to balance himself with the left lower leg while using his walking during limited daily activities. She also reports functional use of the left ankle and knee. Dr. Larsen also observed the Injured Worker pushing himself up on the exam table by actively flexing the hip and flexing and extending the knee and ankle and similarly while changing position to his side.

(Emphasis sic.)

{¶ 22} 8. Relator's further appeal was refused by order of the commission mailed May 20, 2015.

{¶ 23} 9. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 24} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 25} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 26} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by

entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 27} Relator asserts that all of the medical evidence establishes that he has lost the use of his left lower extremity for all practical purposes and Dr. Larsen failed to apply this standard. Relator argues that the only purpose his left leg now serves is for balance, stating: "Just as if Relator's leg was amputated and replaced with a prosthetic, he is able to balance on it but not be afforded any functionality beyond that ability to balance." (Relator's Brief, 11-12.)

{¶ 28} In order to qualify for a loss of use award, relator was required to present medical evidence demonstrating that, for all intents and purposes, he had lost the use of his left upper extremity. *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166.

{¶ 29} In *Alcoa*, at ¶ 10, the court set forth the historical development of scheduled awards for loss of use under R.C. 4123.57(B) as follows:

> Scheduled awards pursuant to R.C. 4123.57(B) compensate for the "loss" of a body member and were originally confined to amputations, with the obvious exceptions of hearing and sight. In the 1970s, two cases—*State ex rel. Gassmann v. Indus. Comm.* (1975), 41 Ohio St.2d 64, 70 O.O.2d 157, 322 N.E.2d 660, and *State ex rel. Walker v. Indus. Comm.* (1979), 58 Ohio St.2d 402, 12 O.O.3d 347, 390 N.E.2d 1190— construed "loss," as similarly used in R.C. 4123.58, to include loss of use without severance. *Gassmann* and *Walker* both involved paraplegics. In sustaining each of their scheduled loss awards, we reasoned that "[f]or all practical purposes, relator has lost his legs to the same effect and extent as if they had been amputated or otherwise physically removed." *Gassmann*, 41 Ohio St.2d at 67, 70 O.O.2d 157, 322 N.E.2d 660; *Walker*, 58 Ohio St.2d at 403-404, 12 O.O.3d 347, 390 N.E.2d 1190.

{¶ 30} In *Alcoa*, the claimant, Robert R. Cox, sustained a left arm amputation just below his elbow.  Due to continuing hypersensitivity at the amputation site, Cox was prevented from ever wearing a prosthesis.  Consequently, Cox filed a motion seeking a scheduled loss of use award for the loss of use of his left arm.

{¶ 31} Through videotape evidence, Alcoa established that Cox could use his remaining left arm to push open a car door and to tuck paper under his arm.  In spite of this evidence, the commission granted Cox an award for the loss of use of his left arm.

{¶ 32} Alcoa filed a mandamus action which this court denied.  Alcoa appealed as of right to the Supreme Court of Ohio.

{¶ 33} Affirming this court's judgment and upholding the commission's award, the Supreme Court explained, at ¶ 10-15:

> Alcoa urges the most literal interpretation of this rationale and argues that because claimant's arm possesses some residual utility, the standard has not been met. The court of appeals, on the other hand, focused on the opening four words, "for all practical purposes." Using this interpretation, the court of appeals found that some evidence supported the commission's award and upheld it. For the reasons to follow, we affirm that judgment.
>
> Alcoa's interpretation is unworkable because it is impossible to satisfy. *Walker* and *Gassmann* are unequivocal in their desire to extend scheduled loss benefits beyond amputation, yet under Alcoa's interpretation, neither of those claimants would have prevailed. As the court of appeals observed, the ability to use lifeless legs as a lap upon which to rest a book is a function unavailable to one who has had both legs removed, and under an absolute equivalency standard would preclude an award. And this will always be the case in a nonseverance situation. If nothing else, the presence of an otherwise useless limb still acts as a counterweight—and hence an aid to balance—that an amputee lacks. Alcoa's interpretation would foreclose benefits to the claimant who can raise a mangled arm sufficiently to gesture or point. It would preclude an award to someone with the hand strength to hold a pack of cards or a can of soda, and it would bar—as here—scheduled loss compensation to one with a limb segment of sufficient length to push a car door or tuck a newspaper. Surely, this could not have been the intent of the

General Assembly in promulgating R.C. 4123.57(B) or of *Gassmann* and *Walker.*

Pennsylvania defines "loss of use" much as the court of appeals did in the present case, and the observations of its judiciary assist us here. In that state, a scheduled loss award requires the claimant to demonstrate either that the specific bodily member was amputated or that the claimant suffered the permanent loss of use of the injured bodily member for all practical intents and purposes. Discussing that standard, one court has written:

"Generally, the 'all practical intents and purpose' test requires a more crippling injury than the 'industrial use' test in order to bring the case under section 306(c), supra. However, it is not necessary that the injured member of the claimant be of absolutely no use in order for him to have lost the use of it for all practical intents and purposes." *Curran v. Walter E. Knipe & Sons, Inc.* (1958), 185 Pa.Super. 540, 547, 138 A.2d 251.

This approach is preferable to Alcoa's absolute equivalency standard. Having so concluded, we further find that some evidence indeed supports the commission's decision. Again, Dr. Perkins stated:

"It is my belief that given the claimant's residual hypersensitivity, pain, and tenderness about his left distal forearm, that he is unable to use his left upper limb at all and he should be awarded for the loss of use of the entire left upper limb given his symptoms. He has been given in the past loss of use of the hand, but really he is unable to use a prosthesis since he has had the amputation, so virtually he is without the use of his left upper limb * * *."

{¶ 34} In denying him a loss of use award, the commission specifically relied on the independent medical evaluation of Dr. Larsen who specifically noted as follows in her physical examination:

Passive range of motion of the left hip reveals normal motion in all planes. There is no thigh or leg muscle atrophy. * * * Examination of the left knee reveals full extension and flexion without discomfort. * * * There is no joint tenderness, effusion, or instability. * * * Motor strength testing is limited by voluntary effort, as he initially did not perform any

motion at the hip, knee, or ankle when requested. However, after discussion that it was noted that prior examiner's had documented motion and strength in these areas, he demonstrated 4/5 strength at the knee extensors, 5/5 at the ankle dorsiflexors, and brief but good strength (he was able to provide good resistance to manual muscle testing but briefly and at partial range) at the hip flexors. * * * He is observed to use the left lower limb to push himself up along the exam table by actively flexing the hip and flexing and extending the knee and ankle and similarly while changing positions to side lying. He ambulates with use of a walker, swinging the left leg through with touch down weight bearing on the left foot and appeared to be avoiding putting weight through the left leg on direct examination. On indirect observation as he entered the examination room and left the office, it is noted that he did shift his weight through the left hip and weight bear equally at times through the left leg and foot while wearing an AFO.

{¶ 35} Dr. Larsen noted further:

While it is noted in the report of Dr. Hochman that Mr. Gwiazda has no active flexion or extension of the hip or knee, both my examination and review of the records, as discussed in the history section of this report, reveals that he does have good knee and ankle extension and flexion although there is significant weakness of the gluteal/hip girdle muscles with partial hip flexor activation. Although his performance is variable on my examination, there is definite ability to activate and use the left knee, ankle, and foot, and a partial ability to use the left hip flexors, to change positions, bear weight at times and assist during position changes, standing, and ambulation.

{¶ 36} Contrary to Dr. Hochman's report, Dr. Larsen found that relator had full knee and ankle extension and flexion, had the ability to activate and use the left knee, ankle, and foot, had partial ability to use his left hip flexors, and had a lack of thigh/leg muscle atrophy.  Further, Dr. Larsen noted that, on indirect examination, relator shifted his weight through his left hip and bore weight equally at times through the left leg and foot while wearing an AFO.  The magistrate finds that Dr. Larsen did not misapply the *Alcoa* standard.

{¶ 37} Although relator asserts that all of the evidence shows that he is only able to use his left leg to help him balance, Dr. Larsen's report indicates that relator is able to use his left leg more than just to provide balance. Further, Dr. Larsen found that he had full use of his left knee and ankle. To the extent that relator points to Dr. Fink's report, his report supports some of Dr. Larsen's findings and contradicts others. There is no dispute here that relator has a significant loss of use of his left lower extremity. Relator requires a walker in order to ambulate. According to Dr. Larsen, relator is able to move his left leg, bear weight on his left leg, and push himself up by actively flexing his hip and flexing and extending his knee and ankle. Although relator asserts that the commission required him to demonstrate that the leg was completely useless, with no functionality whatsoever, the magistrate disagrees.

{¶ 38} Credibility and the weight to be given evidence are within the discretion of the commission as fact finder and it is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission's. *Teece*; *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373 (1996). Because there is some evidence in the record to support the commission's determination, relator has not demonstrated that the commission abused its discretion.

{¶ 39} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying his motion for total loss of use of his left lower extremity and this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).