[Cite as *State ex rel. Pritt v. Indus. Comm.*, 2018-Ohio-1066.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Jackie L. Pritt,      :

      Relator,      :

v.      :      No. 17AP-98

Industrial Commission of Ohio and      :      (REGULAR CALENDAR)
Cuyahoga County,

      :

      Respondents.

      :

---

D E C I S I O N

Rendered on March 23, 2018

---

**On brief:** *Paul W. Flowers Co.*, *L.P.A.*, and *Paul W. Flowers*; *Bashein & Bashein Co.*, *L.P.A.*, and *Richard W. Bashein*, for relator.

**On brief:** *Michael DeWine*, Attorney General, and *Eric J. Tarbox*, for respondent Industrial Commission of Ohio.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

SADLER, J.

{¶ 1} Relator, Jackie L. Pritt, brings this original action seeking a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its June 28, 2016 order denying relator's motion for permanent total disability ("PTD") and ordering the commission to issue an order granting compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who rendered a decision and recommendation that includes findings of fact and conclusions of law, which is appended

hereto. Therein, the magistrate concluded the commission did not abuse its discretion in denying relator's application for PTD.

{¶ 3} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986).

{¶ 4} Relator's objections focus on the staff hearing officer's ("SHO") consideration of "non-disclosed medical conditions" that allegedly resulted in relator's receipt of Public Employees Retirement System disability benefits in 2009, and the SHO's finding that relator's non-allowed medical conditions prevented him from participating in vocational rehabilitation services. Relator argues that "references to non-allowed conditions permeated the SHO's ruling," and the SHO "specifically relied on them" in denying PTD. (Objs. at 5.) Accordingly, relator contends the magistrate erred by ruling that the errors in the SHO's order are severable from the remainder of the order, and the errors do not require this court to issue the requested writ. We disagree.

{¶ 5} The magistrate relied on this court's decision in *State ex rel. Barnett v. Indus. Comm.*, 10th Dist. No. 14AP-628, 2015-Ohio-3898, in support of its ruling on severability. In *Barnett*, claimant suffered an injury to her back while working as a bus driver. The commission denied claimant's vocational rehabilitation referral request after finding that she was not a feasible candidate for vocational rehabilitation services. Claimant subsequently filed a PTD application. In denying claimant's application, the SHO concluded relator had a 15 percent whole body impairment from her industrial injury, and she was capable of performing sedentary work. The SHO then reviewed claimant's nonmedical factors and found claimant's work history suggests transferrable work skills, and her "vocational history is a vocational asset." *Id.* at ¶ 6. The SHO's order also noted that because claimant had "not participated in a rehabilitation program or indicated any effort to obtain training," the order denying relator vocational rehabilitation services did not "necessitate a finding of permanent total disability." *Id.*

{¶ 6}   A magistrate of this court found the record contained some evidence in support of the SHO's order, and the incorrect statement regarding claimant's efforts to obtain vocational training could be separated from the remainder of the order.   In overruling claimant's objection to the magistrate's decision, this court concluded: "the SHO's denial of PTD was not based on relator's failure to participate in vocational rehabilitation.   Rather, the SHO relied on Dr. [James] Powers' medical report and the SHO's own analysis of the nonmedical factors to conclude that relator was capable of performing sustained remunerative employment."  *Id.* at ¶ 11.   Accordingly, we held that erroneous statement in an SHO's order regarding the claimant's alleged failure to indicate any effort to obtain training did not require the issuance of a writ of mandamus because the incorrect statement could easily be separated from the SHO's analysis in the remainder of the order.  *Id.* at ¶ 12.

{¶ 7}   The circumstances of this case are similar to those addressed in *Barnett*, and the same result is required.   Here, the magistrate correctly observed the physicians and psychologists who examined relator for the allowed physical and mental conditions in the claim "universally opined" that the industrial injury permits sedentary employment. (Mag.'s Decision at 17.)   Relator concedes the record contains some evidence to support the SHO's determination that relator is capable of performing sedentary work.

{¶ 8}   The SHO's order also reveals a thorough analysis of the relevant nonmedical disability factors, including relator's age, education, work history, and transferrable skills. The SHO determined the relevant nonmedical disability factors do not preclude relator from currently engaging in sustained remunerative employment of a sedentary nature. The SHO found as follows:

> Staff Hearing Officer finds the Injured Worker's age of 59 and number of years of work demonstrates Injured Worker's long term employability and expectation that Injured Worker can adapt to new work situations in competition with others based on the allowed conditions in the claim.
>
> * * *
>
> * * * Staff Hearing Officer finds that that based upon the Injured Worker's lengthy work history, documenting a positive work ethic and demonstrated ability to maintain

> employment involving supervisory duties, that Injured Worker has transferrable skills that would allow him to perform work in the sedentary category consistent with the reports of Dr(s). Fink, Scheatzle, and Zellers.

(July 20, 2008 Record of Proceedings at 3.)

{¶ 9} Neither relator's complaint in this matter nor his objections to the magistrate's decision challenge the SHO's analysis of the relevant nonmedical disability factors or the SHO's conclusion that relator has "transferrable skills that would allow him to perform work in the sedentary category." (July 20, 2008 Record of Proceedings at 3.)

{¶ 10} Our review of the record and the substance of the SHO's July 20, 2008 order reveal the SHO did not rely on relator's non-allowed conditions as a basis to deny PTD. Rather, the SHO merely found that relator's failure to participate in vocational rehabilitation services was attributable to relator's non-allowed conditions, not the allowed conditions in the claim. The SHO denied relator's PTD application based on finding that relator was currently capable of engaging in sustained remunerative employment, the availability of vocational rehabilitation services notwithstanding. The magistrate noted that relator's "fail[ure] to enter a vocational rehabilitation program, for whatever reason, does not detract from the SHO's analysis that relator is able to perform sustained remunerative employment based on the relied on medical evidence and consideration of the non-medical factors." (Mag.'s Decision at ¶ 57.) Accordingly, the magistrate found, pursuant to *Barnett*, the SHO's erroneous conclusion regarding relator's failure to participate in vocational rehabilitation services was severable from the SHO's other stated rationale for denying PTD. We agree. In our view, the error in the SHO's decision does not require the issuance of the writ of mandamus ordering the commission to award relator PTD benefits.

{¶ 11} With regard to the SHO's reference to undisclosed medical conditions, the magistrate acknowledged that the SHO erred by relying on non-allowed medical conditions as a rationale for denying PTD. This court, however, has previously stated "[w]here the commission provides an alternative rationale for its determination which withstands the scrutiny of mandamus review and provides an independent basis for the commission's decision, the fact that the commission incorrectly applied the law in a

separate portion of the order does not constitute grounds for the granting of a writ of mandamus." *State ex rel. Davis-Hodges v. Indus. Comm.*, 10th Dist. No. 10AP-183, 2010-Ohio-5871, ¶ 41, citing S*tate ex rel. Crown Cork & Seal Co., Inc. v. Indus. Comm.*, 10th Dist. No. 04AP-909, 2005-Ohio-3788; *State ex rel. Kinzer v. Sencorp/Senco*, 10th Dist. No. 02AP-1054, 2003-Ohio-4178. Put another way, " '[i]f it can be said that relator has challenged only one of two bases [for denial of a PTD application], he cannot show entitlement to a writ of mandamus if the basis he has failed to challenge supports the commission's decision.' " *Ohio ex rel. Reichley v. Indus. Comm. of Ohio & Cooper Tire & Rubber Co.*, 10th Dist. No. 16AP-263, 2017-Ohio-2939, ¶ 6, quoting *State ex rel. Terry v. Anderson's, Inc.*, 10th Dist. No. 13AP-652, 2014-Ohio-4169, ¶ 57.

{¶ 12} As previously noted, the SHO determined relator is medically capable of engaging in sustained remunerative employment of a sedentary nature, and the relevant nonmedical disability factors do not preclude relator from currently engaging in such employment. Thus, the SHO provided an alternative rationale for denying PTD which provides an independent basis for the commission's decision. The magistrate determined because the record contains "some evidence" to support the SHO's alternative determination, the commission did not abuse its discretion in denying PTD even though the SHO incorrectly applied the law in a separate portion of the order. *Davis-Hodges* at ¶ 41. We agree with the magistrate.

{¶ 13} An appellate court will not determine the commission abused its discretion when there is some evidence in the record to support the commission's findings. *State ex rel. Medina v. Indus. Comm.*, 10th Dist. No. 15AP-29, 2016-Ohio-173, ¶ 11, citing *State ex rel. Rouch v. Eagle Tool & Machine Co.*, 26 Ohio St.3d 197, 198 (1986); *Barnett* at ¶ 9. "The some evidence standard 'reflects the established principle that the commission is in the best position to determine the weight and credibility of the evidence and disputed facts.' " *Id.*, quoting *State ex rel. Woolum v. Indus. Comm.*, 10th Dist. No. 02AP-780, 2003-Ohio-3336, ¶ 4, citing *State ex rel. Pavis v. Gen. Motors Corp.*, 65 Ohio St.3d 30, 33 (1992). Our review of the record discloses some evidence to support the denial of PTD in accordance with the alternative rationale cited by the SHO. Because the commission provided an independent basis for the denial of PTD that withstands the scrutiny of mandamus review, the commission did not abuse its discretion in denying relator's PTD

application even though the SHO's order contains certain errors as noted above. On this record, the errors in the SHO's order do not require us to issue a writ of mandamus ordering the commission to grant relator's application for PTD benefits. Accordingly, relator's objections are overruled.

{¶ 14} Following an independent review of the magistrate's decision and the objections filed by respondent, we find the magistrate has determined the pertinent facts and properly applied the relevant law. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. For the reasons set forth in the magistrate's decision and those expressed herein, relator's objections are overruled.

*Objections overruled*;
*writ of mandamus denied.*

DORRIAN, J., concurs.
LUPER SCHUSTER, J., dissents.

LUPER SCHUSTER, J., dissenting.

{¶ 15} I respectfully dissent. As the majority recognizes, the SHO made at least two errors. First, the SHO erroneously placed the burden on the employee to prove that the non-allowed conditions were not the cause of his inability to perform sustained remunerative employment. Second, the SHO incorrectly suggested the PTD application could not be granted without disclosure of the PERS medical conditions. Unlike the majority, I would not find the portions of the SHO order containing these errors severable. Rather, I would sustain the objections related to the portions noted, grant a limited writ, and remand the matter to the commission to review the PTD application without the erroneous legal conclusions noted above.

_____

**A P P E N D I X**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Jackie L. Pritt, | : | |
| Relator, | : | |
| v. | : | No. 17AP-98 |
| Industrial Commission of Ohio and | : | (REGULAR CALENDAR) |
| Cuyahoga County, | : | |
| Respondents. | : | |

---

**M A G I S T R A T E ' S   D E C I S I O N**

**Rendered on October 2, 2017**

---

*Paul W. Flowers Co., L.P.A.,* and *Paul W. Flowers,* and *Bashein & Bashein Co., L.P.A.,* and *Richard W. Bashein,* for relator.

*Michael DeWine*, Attorney General, and *LaTawnda N. Moore,* for respondent Industrial Commission of Ohio.

*Michael C. O'Malley,* Prosecuting Attorney, and *Dale F. Pelsozy,* for respondent Cuyahoga County.

---

IN MANDAMUS

{¶ 16} In this original action, relator, Jackie L. Pritt, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the June 28, 2016 order of its staff hearing officer ("SHO") that denied relator's application for permanent total disability ("PTD") compensation, and to enter an order granting the compensation.

Findings of Fact:

{¶ 17} 1. On July 20, 2008, relator injured his knees and quadriceps tendons while employed as a corrections officer for respondent, Cuyahoga County, a state-fund employer. Relator alleged that his injury occurred when he slipped and fell on the floor.

{¶ 18} 2. The industrial claim (No. 08-843255) is allowed for:

> Sprain left knee and leg; contusion left knee; tear of the left quadricep[s] tendon; tear of the right quadriceps tendon; other postoperative right infection; major depressive disorder.

{¶ 19} 3. On August 22, 2008, relator underwent bilateral quadriceps tendon repairs. The surgery was performed by Robert M. Molloy, M.D., who issued the operative report.

{¶ 20} 4. On December 2, 2011, relator underwent another surgery to his right quadriceps due to an infection. The surgery was performed by Robert Leb, M.D., who issued the operative report.

{¶ 21} 5. On May 21, 2012, relator underwent another surgery to his right quadriceps. The surgery was performed by Dr. Leb who issued the operative report. The operative report describes the procedure as "[a]n incision and drainage of the right quadriceps site with excision of the sinus tract."

{¶ 22} 6. On May 3, 2013, relator underwent a surgery to his right knee. The surgery was performed by Dr. Leb who issued the operative report. The operative report describes the procedure as "incision and drainage and saucerization of the sinus tract for the superficial wound infection of right knee with cultures and 6L of antibiotic irrigation."

{¶ 23} 7. On October 22, 2014, relator underwent yet another surgery to his right knee. The surgery was performed by Dr. Leb who issued the operative report. The operative report describes the procedure as "[d]raining sinus from the right knee suprapatellar area, status post a remote quadriceps rupture and repair."

{¶ 24} 8. The stipulated record contains an internal memorandum of the Ohio Bureau of Workers' Compensation ("bureau") dated April 28, 2010 from "Mario D." to Carleton Fitzpatrick, a vocational rehabilitation coordinator employed by a managed

care organization ("MCO").  In the bureau memorandum that begins with "Hi Carleton," Mario D. states:

> IW's Voc Eligibility is confirmed but IW's Voc Feasibility remains questionable. Per the 4/20/10 DHO Order, IW is MMI. Dr. Trangle's 2/18/10 IME is referenced. Dr. Trangle reports that:
>
> [One] "IW's ambulatory status has progressed to the point that IW can now walk with a walker but that has not changed in the last 7 or 8 months."
>
> [Two] "IW has not continued on home based exercise therapy and finds it difficult to do so, which may indeed be true because of his massive obesity (6'2" and 453 lbs)."
>
> [Three] "The only treatment that would be of benefit to him would be a radical weight loss program and an aggressive PT program of 2 hrs/day and to reduce his caloric intake." "This combination may allow him to become more mobile." Please note, any Voc Rehab programming related to unallowed conditions, i.e. Weight Loss program, is limited to $2,000.00.
>
> [Four] IW has no High School Diploma nor GED.
>
> [Five] Unrelated medical conditions noted: Diabetes, HBP and High Cholesterol.
>
> The only RTW job restrictions on file are from the 2/18/10 IME. These include:
>
> [One] "Clearly, at the moment he is able only to do a sitting job."
>
> [Two] "He cannot do any job that involves ambulating at all."
>
> [Three] "He cannot bend, lift or go up and down stairs. He cannot return to his job as a Corrections Officer."
>
> The most recent restrictions submitted by Dr. Bretenbach on 3/15/10 "totally disable" the IW from working 3/15/-5/10/10.
>
> It's also important to note that "R Quadriceps Tear" has been specifically Disallowed.

> If IW is deemed Feasible for Voc Rehab programming, please let us know who the assigned Voc Case Manager will be. If deemed Non-Feasible, please forward Voc Non-Feasibility Letter.

{¶ 25} 9. The stipulated record contains a subsequent internal bureau memorandum dated January 24, 2011 from "Mario D." The memorandum states:

> Hi Carleton,
>
> Based on authorization of IW's TT through 2/28/11, Voc Eligibility is confirmed. IW's Voc Feasibility is questionable. Please see the previous 4/28/10 response to Voc Rehab Eligibility Request. Voc Rehab Eligibility will be letter generated. Please forward copy of Voc Non-Feasibility Letter.

{¶ 26} 10. By letter dated January 24, 2011, Carleton Fitzpatrick, on behalf of the MCO and the bureau, informed relator:

> The Bureau of Workers Compensation (BWC) has determined that you are eligible for Voc Rehab services. However, review of your file indicates that you are not feasible to receive services at this time as a precursor to RTW. The non-feasibility status is based on your continued medical instability and POR recommendations.

{¶ 27} 11. The record contains a letter dated March 30, 2015 to relator from Crystal Apgar RN, a case manager employed by CompManagement Health Systems, Inc. The letter informs relator:

> This correspondence is to inform you that your case management file is closed effective 3/30/15 for case management services only. This closure is not a closure of your BWC claim file or your case with CompManagement Health Systems. Should you need additional information regarding your closure to case management, you may contact me at the number listed below.
>
> Closure rationale: Medical Stability

{¶ 28} 12. On March 23, 2016, relator filed an application for PTD compensation.

{¶ 29} 13. Earlier, on May 11, 2015, at the request of the bureau, relator was examined by psychologist Kenneth Gruenfeld, Psy.D.  In his five-page narrative report, Dr. Gruenfeld responds to several queries:

> **[Two] Can the injured worker return to his/her former position of employment? If yes, are there any restrictions or modifications?**
>
> The claimant's mental health issues likely do prevent him from returning to his former position of employment. His problems with depression continue to manifest including problems with focus and motivation. It is believed that his problems with distractibility and motivation inhibit his ability to return to work at this time.
>
> **[Three] Please provide a summary of any functional limitations solely due to the psychological condition in this claim. In other words, please indicate the type of work the injured worker can perform and supportive rational for your opinion.**
>
> Given his current mental health issues, he is unlikely to thrive in a moderate to high stress job setting. He is more likely able to work a job in an office where there is less stress to trigger his depression.
>
> **[Four] Are there any recommendations for vocational rehabilitation?**
>
> Yes. Vocational rehabilitation is recommended at this time.
>
> **[Five] Is the current treatment necessary and appropriate for the psychological condition(s)?**
>
> The treatment, psychotherapy and medication management, are appropriate for the psychological condition of the claimant. In terms of necessity, it is believed by this examiner that the injured worker has achieved MMI and is no longer gaining additional benefits from psychotherapy.

(Emphasis sic.)

{¶ 30} 14. On June 5, 2015, at the bureau's request, relator was examined for the allowed physical conditions of the claim by Paul T. Scheatzle, D.O. In his four-page narrative report, Dr. Scheatzle states:

> **HISTORY OF CLAIM:** As you know, Mr. Pritt is a 59-year-old male seen today in independent medical evaluation. He was injured on 07/20/08 while working for Cuyahoga County as a corrections officer. On the day of injury, he fell in the kitchen on some chicken grease, tearing his left leg quadriceps tendon. He went to the hospital emergency department. Imaging has included x-rays and MRIs. He had a nursing home admission where he was on bed rest for several months with leg on leg immobilizer. He subsequently had repair of his left leg. He suffered another fall with subsequent tear of his right quadriceps tendon which required surgery as well. He developed postop infection requiring drainage per Dr. Leb.
>
> Currently, he complains of weakness and pain in both knees, left worse than right. He rates it as moderate, 6 to 8 out of 10, frequent in nature. He had been on Percocet previously. Currently, he is on Ultram, improved with rest, ice, or Rollator walker. He had requested a power-assisted electric wheelchair for mobility, but it had not been obtained.

{¶ 31} In his report, Dr. Scheatzle responds to several queries:

> The injured worker's condition has plateaued. He has received bilateral quadriceps rupture repairs. He has progressed to being able to ambulate with a Rollator walker. His condition has plateaued and is not expected to change further, and he has reached maximum medical improvement.
>
> * * *
>
> [T]he injured worker cannot return to work at his former employment as a corrections officer. There are no restrictions or modifications that would allow him to return to this type of work.
>
> * * *
>
> The functional limitations due to the physical conditions in the claim that would include sedentary activities, lifting up to 10 pounds occasionally but no carrying activities, walk short

household distances up to 100 feet with a Rollator walker. No stair climbing, no bending or twisting activities. He can sit frequently or change positions as needed.

* * *

There are no recommendations for vocational rehabilitation.

* * *

[T]he current treatment is necessary and appropriate for allowed medical conditions in the claim.

The injured worker has been maintained with chronic Ultram and Neurontin for pain management as well as aggressive pain management of his comorbidities. He has received dietetic counseling and counseling for associated depression.

* * *

Recommendations for treatment would include ongoing encouragement for slow weight loss, increased daily walking activities, range of motion and strengthening exercises, ice modalities. These should be done on [a] daily basis.

{¶ 32} 15. On August 14, 2015, at the employer's request, relator was examined for the allowed physical conditions of the claim by Gordon Zellers, M.D. In his six-page narrative report, Dr. Zellers opines:

Clinically, based upon this patient's presentation as it relates to the body regions in question, it is readily apparent that he is unable to sustain remunerative employment activities in any capacity. This opinion specifically takes into consideration the fact that he is unable to safely perform and/or tolerate any significant standing/ambulatory activities; he is reporting significant refractory regional pain complaints and his regional limitations are now necessitating assistance with a number of routine activities of daily living (i.e. the patient is currently unable to drive, dress himself and/or use the restroom without assistance).

Administratively, however, it must be emphasized that the patient's current physical claim allowances represent only a limited component of his regional physical presentation.

More specifically, the patient's unrelated/non-occupational conditions and in particular his history of morbid obesity greatly contribute to his inability to perform routine physical activities.

* * *

Upon acknowledging the significance of these unrelated/non-occupational conditions, it is more probable than not that in the absence of these unrelated/non-occupational conditions the patient's current physical claim allowances would not, in and of themselves, render him permanently and totally disabled from all forms of remunerative employment. In other words, in the absence of these numerous unrelated/non-occupational conditions it is more probable than not that this patient would be able to function in the work environment on at least a sedentary basis.

* * *

[U]pon specifically acknowledging the limited nature of the patient's allowed conditions and the dramatic impact that the patient's unrelated/non-occupational conditions have had upon his general health, it is more probable than not that in the absence of the patient's unrelated/non-allowed conditions he would be able to function in the work environment on at least a sedentary basis.

As a result, upon specifically taking into consideration only the physical conditions allowed for under the umbrella of this industrial claim and upon exclusion of the patient's numerous non-occupational factors, I am of the opinion that the patient's physical claim allowances, as set forth above, do not, in and of themselves, render this individual permanently and totally disabled from all forms of sustained remunerative employment. On the contrary, while this patient's allowed conditions do preclude him from resuming his original work activities as a corrections officer, they do not, in and of themselves, preclude his performance of modified gainful employment activities. As a result, I am of the opinion that the patient's physical claim allowances do not, in and of themselves, support and/or justify the request for permanent total disability as set forth above.

{¶ 33} 16. On August 27, 2015, at the employer's request, relator was examined by psychologist Donald J. Tosi, Ph.D.  In his seven-page report, Dr. Tosi opined:

> This claim is allowed for Major Depressive Disorder. The Injured Worker has multiple unrelated medical conditions pre and post-injury which, in my opinion, contributed heavily to his depressive inclinations (i.e., right testicle surgery, 2012; diabetes; hypertension; peptic ulcers, heart disease; cellulitis; and morbid obesity). The Injured Worker is prescribed multiple medications for these unrelated conditions (i.e., Metoprolol, Simvastatin, Torsemide, Lisinopril, Lantus, Humalog, and Fluticasone). Other significant life stressors are noted (Injured Worker's brother committed suicide ten years ago; academic difficulties; family history of alcoholism). From a psychological standpoint, this Injured Worker denies crying spells, never attempted suicide, and denies any suicidal ideation, plan, or intent. Psychomotor retardation/agitation are absent. At this time, the Injured Worker's depression is of mild severity and does not impair him clinically in his activities of daily living, cognitively, socially, or occupationally. He is capable of returning to sustained remunerative employment in any capacity, specific to the allowed psychological condition.
>
> * * *
>
> The Injured Worker is not permanently and totally disabled from all forms of sustained remunerative employment, including that of Corrections Officer, as a direct and sole result of the allowed psychological condition.

{¶ 34} 17. On November 13, 2015, at the commission's request, relator was examined by psychologist Loren Shapiro, Ph.D.  In a nine-page narrative report, Dr. Shapiro opines:

> Based on psychological functioning only, the IW is capable of work with no limitations. Psychological functioning would be within acceptable limits for any vocational task the IW would be capable of engaging in physically, in this writer's opinion, within psychological certainty.

{¶ 35} 18. On November 13, 2015, Dr. Shapiro completed a form captioned "Occupational Activity Assessment, Mental & Behavioral Examination."  On the form,

Dr. Shapiro indicated by a mark "[t]his Injured Worker has no work limitations."  In the space provided, Dr. Shapiro added:

> Based on psychological functioning only, the IW is capable of work with no limitations. Psychological functioning would be within acceptable limits for any vocational task the IW would be capable of engaging in physically, in this writer's opinion, within psychological certainty.

{¶ 36} 19. On November 11, 2015, at the commission's request, relator was examined by Eli Fink, M.D., who specializes in physical medicine and rehabilitation.  In his four-page narrative report, Dr. Fink opined:

> Mr. Pritt suffered bilateral quadriceps tendon repairs which were successfully repaired. He had several prolonged periods of forced immobilization due to the original injuries along with subsequent infections, contributing to lower limb weakness and dysfunction. Ambulation is markedly limited. Based solely on allowed conditions considered in this report, Mr. Pritt can perform sedentary work. He cannot operate foot controls. In the seated position, lifting is not limited.
>
> * * *
>
> The Injured Worker is at MMI for all conditions considered in this report. No further significant improvement in function can reasonably be expected.
>
> * * *
>
> It is my opinion that the combined whole person impairment for the allowed conditions considered in this report is 16%.

{¶ 37} 20. On November 11, 2015, Dr. Fink completed a "Physical Strength Rating."  On the form, Dr. Fink indicated by his mark that relator is capable of "sedentary work."  The form asks the examining physician "[f]urther limitations, if indicated."  In response, Dr. Fink wrote "[w]hile seated, lifting is not limited."

{¶ 38} 21. Following a June 28, 2016 hearing, an SHO issued an order that denies the PTD application.  The SHO's order explains:

> This order is based upon the examination reports of Eli Fink, M.D., dated 11/11/2015, Loren Shapiro, Ph.D., dated 11/13/2015, Paul Scheatzle, M.D., dated 06/15/2015,

Kenneth Gruenfeld, Psy.D., dated 05/21/2015, Gordon Zellers, M.D., dated 08/14/2015 and Donald Tosi, Ph.D., dated 08/27/2015.

Eli Fink, M.D., examined Injured Worker on behalf of the Industrial Commission for the allowed physical conditions on 11/11/2015 and found that the allowed conditions herein have reached a level of maximum medical improvement, that Injured Worker cannot return to his former position of employment of a corrections officer, however, found Injured Worker is capable of sedentary work.

Sedentary work means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

Paul Scheatzle, M.D., examined Injured Worker on behalf of the Bureau of Workers' Compensation on 06/05/2015 and found Injured Worker to have reached a level of maximum medical improvement, unable to return to his former position of employment but found Injured Worker capable of sedentary activities.

Gordon Zellers, M.D., examined Injured Worker on behalf of the Employer on 08/14/2015 for the allowed physical conditions and opined that in absence of Injured Worker's significant unrelated and non-occupational conditions, Injured Worker would be able to function in the work environment on at least a sedentary basis.

Loren Sharpiro, Ph.D., examined the Injured Worker on 11/13/2015 on behalf of the Industrial Commission for the allowed psychological condition herein and opined the Injured Worker is at a level of maximum medical improvement and the Injured Worker is capable of work with no limitations. Dr. Shapiro opines psychological functioning would be within acceptable limits for any vocational task Injured Worker would be capable of engaging in physically.

Dr. Gruenfeld examined on behalf of the Bureau of Workers' Compensation on 05/11/2015 and further opined the Injured Worker has reached a level of maximum medical improvement for the allowed psychological condition. Dr. Gruenfeld indicates the Injured Worker is unable to return to his former position of employment as a corrections officer but can work a job in an office where there is less stress.

Dr. Tosi examined on behalf of the Employer on 08/27/2015 and finds the Injured Worker's depression is of mild severity and does not impair him clinically in the activities of daily living, cognitively, socially, or occupationally. Dr. Tosi finds the Injured Worker is capable of returning to sustained remunerative employment in any capacity, specific to the allowed psychological condition.

Staff Hearing Officer accepts the findings of the above-listed examining physicians and finds the Injured Worker has reached maximum medical improvement for the allowed physical and psychological conditions in the claim. Staff Hearing Officer, however finds the medical impairment alone is not dispositive of the issue of permanent and total disability. Therefore, Staff Hearing Officer finds an analysis of Injured Worker's non-disability factors appropriate for consideration of Injured Worker's application for permanent and total disability.

Staff Hearing Officer finds the Injured Worker is currently 59 years of age. In general, age refers to one's chronological age and the extent to which one's age affects the ability to adapt to a new work situation and to do work in competition with others.

Injured Worker has limited education having completed through the 11th grade without obtaining a high school diploma or GED equivalent. Injured Worker did attend ITT Technical College for a short period of time as noted within the examination report of Loren Shapiro, Ph.D., dated 11/13/2015.

Injured Worker further performed work in the semi-skilled and skilled categories.

Semi-skilled work is work that needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require close attention to watching machine

processes or inspecting, testing, or otherwise looking for irregularities or tending or guarding equipment, property, material, or persons against loss, damage, or injury in other types of activities which are similarly less complex than skilled work but more complex than un-skilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary as one['s] hands or feet must be moved quickly in a repetitive task.

Skilled work is work that requires qualifications in which a person uses judgment or involves dealing with people, factors, or figures where substantial ideas at a high level of complexity. Skilled work may require qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations for mechanical adjustments or control or regulate work.

Injured Worker's reported previous work experience includes building maintenance from 1971 through 1980 where Injured Worker installed appliances, repaired drains, and performed basic plumbing, carpentry and electrical work. Injured Worker was required to have knowledge of general maintenance repair and use of hand tools in other equipment associated with this job. Injured Worker further worked as a correctional officer from 1980 through the date of injury which required Injured Worker to supervise inmates for 19 years requiring Injured Worker to maintain strict control and supervision of all activities of multiple individuals.

Staff Hearing Officer finds the Injured Worker's age of 59 and number of years of work demonstrates Injured Worker's long term employability and expectation that Injured Worker can adapt to new work situations in competition with others based on the allowed conditions in the claim.

Injured Worker, while limited in education, can read, write and perform basic math functions. Injured Worker has a 38 year work history performing general maintenance, handyman work and supervisory work which are deemed position [sic] vocational factors.

Injured Worker last worked on 07/20/2008. Injured Worker has not participated in rehabilitation services nor sought vocational retraining. Injured Worker was referred for rehab services in 2010 and 2011 but was found not feasible due to unrelated health conditions of morbid obesity and other unrelated medical conditions which include diabetes, high blood pressure and high cholesterol.

The Staff Hearing Officer additionally finds Injured Worker's case management services were again closed effective 03/30/2015 for medical instability without sufficient evidence as to whether the closure was for the allowed conditions or non-medical conditions preventing Injured Worker from progressing with further services. Finally, during the eight years since this injury, Injured Worker has made no attempt to improve his employment status by obtaining his GED or any further certifications.

Staff Hearing Officer additionally finds the Injured Worker began receiving PERS disability for non-disclosed medical conditions in 2009 per Injured Worker's testimony which subsequently converted to regular PERS retirement based on Injured Worker's years of service. Staff Hearing Officer, therefore, also finds that it cannot be determined whether Injured Worker's removal from the workforce is causally related to the allowed conditions in this claim.

Staff Hearing Officer finds the Injured Worker has unrelated medical conditions of morbid obesity, greater than 400 pounds, diabetes, heart disease, cellulitis, hypertension, gastroesophageal reflux disease and hypercholesterolemia.

Staff Hearing Officer finds the evidence presented fails to support that Injured Worker's lack at attempted vocational retraining was due to the allowed conditions in the claim versus the unrelated medical conditions.

Staff Hearing Officer further finds that the medical opinion of Dr. Zellers indicates that absent the unrelated medical and non-occupational conditions, Injured Worker could participate in vocational retraining.

Staff Hearing Officer finds this opinion persuasive given the Injured Worker's positive vocational factors as noted above. Staff Hearing Officer finds that based upon the Injured Worker's lengthy work history documenting a positive work

ethic and demonstrated ability to maintain employment involving supervisory duties, that Injured Worker has transferable skills that would allow him to perform work in the sedentary category consistent with the reports of Dr(s). Fink, Scheatzle, and Zellers.

Accordingly, Staff Hearing Officer finds the contemporaneous medical evidence fails to support that the allowed conditions render Injured Worker permanently totally disabled and the application filed 03/29/2016 is denied.

Conclusions of Law:

{¶ 39} At issue are six paragraphs of the 26 paragraph order of the SHO denying the PTD application. Those six paragraphs address: (1) the 2010 and 2011 referral for rehabilitation services that was found not to be feasible; (2) the March 30, 2015 closure of relator's case management file due to medical instability; (3) the so-called "non-disclosed medical conditions" supporting a Public Employees Retirement System ("PERS") disability finding; (4) a listing of unrelated medical conditions; (5) an alleged failure to show whether the failure to undergo vocational retraining was caused by the allowed conditions or unrelated medical conditions; and (6) Dr. Zeller's opinion that the allowed conditions permit vocational retraining.

{¶ 40} The main issue is whether the six paragraphs are severable from the order such that the remainder of the order stands as a valid and unchallenged finding that denies the PTD application.

{¶ 41} Finding that the six paragraphs of the order are severable from the remainder of the order, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

### Basic Law:  Non-Allowed Medical Conditions

{¶ 42} In a seminal case, the Supreme Court of Ohio held that non-allowed conditions cannot be used to advance or defeat a claim for compensation. *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452 (1993). The mere presence of a non-allowed condition in a claim for compensation does not in itself destroy the compensability of the claim, but the claimant must meet his burden of showing that an

allowed condition independently caused the disability. *State ex rel. Bradley v. Indus. Comm.*, 77 Ohio St.3d 239, 242 (1997).

{¶ 43} While it is the claimant's responsibility to establish a causal relationship between his allowed conditions and his claimed disability, he is not required to disprove a negative. *State ex rel. Ignatious v. Indus. Comm.*, 99 Ohio St.3d 285, 2003-Ohio-3627, ¶ 33. That is, having supplied evidence of a direct causal relationship between an allowed condition and his disability, a claimant is not required to further show that a non-allowed condition is not causing his inability to work. *Id.* That is, the claimant does not have the burden of proof regarding the non-allowed conditions. *Id.* at 32.

## Analysis

{¶ 44} Contrary to *Ignatious,* the SHO's order of June 28, 2016, strongly suggests that the SHO placed a burden on relator to disclose the medical conditions supporting his PERS disability award and further to show that any non-allowed conditions are not causing an inability to perform sustained remunerative employment. This was clearly an error of the SHO's order.

{¶ 45} As earlier noted, non-allowed conditions do not destroy the compensability of the claim. *Bradley.* To the extent that non-allowed conditions are the bases for a PERS disability award, those non-allowed conditions, whatever they may be, cannot destroy the compensability of the claim. That the evidence fails to disclose the medical conditions supporting the PERS disability award is irrelevant to the commission's duty to determine the PTD application. Thus, it is incorrect for the SHO to suggest that the PTD application cannot be granted in the absence of disclosure of the PERS medical conditions.

## Severability

{¶ 46} Ohio Adm.Code 4121-3-34 sets forth the commission's rules regarding the adjudication of PTD applications.

{¶ 47} Ohio Adm.Code 4121-3-34(D) sets forth the commission's guidelines for the adjudication of PTD applications.

{¶ 48} Ohio Adm.Code 4121-3-34(D)(2) provides:

> (b) If, after hearing, the adjudicator finds that the injured worker, based on the medical impairment resulting from the

allowed conditions is unable to return to the former position of employment but may be able to engage in sustained remunerative employment, the non-medical factors shall be considered by the adjudicator.

The non-medical factors that are to be reviewed are the injured worker's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record that might be important to the determination as to whether the injured worker may return to the job market by using past employment skills or those skills which may be reasonably developed. * * *

(c) If, after hearing and review of relevant vocational evidence and non-medical disability factors, as described in paragraph (D)(2)(b) of this rule the adjudicator finds that the injured worker can return to sustained remunerative employment by using past employment skills or those skills which may be reasonably developed through retraining or through rehabilitation, the injured worker shall be found not to be permanently and totally disabled.

{¶ 49} It is clear that the SHO denied the PTD application based on Ohio Adm.Code 4121-3-34(D)(2)(b) and (c).

{¶ 50} Stating reliance on the reports of Drs. Fink, Scheatzle, Zellers, Shapiro, Gruenfeld, and Tosi, the SHO determined that residual functional capacity permitted sustained remunerative employment and that an analysis of the non-medical factors was necessary.  It can be noted that the relied on physicians who examined only for the allowed physical conditions (Drs. Scheatzle, Zellers, and Fink) universally opined that the industrial injury permits sedentary employment.

{¶ 51} The relied on psychologists (Drs. Gruenfeld, Tosi, and Shapiro) universally opined that the depressive disorder permits sustained remunerative employment.

{¶ 52} Dr. Gruenfeld opined that relator "is more likely able to work a job in an office where there is less stress to trigger his depression."

{¶ 53} Dr. Tosi opined that relator's depressive disorder "is of mild severity" and that "[h]e is capable of returning to sustained remunerative employment in any capacity."

{¶ 54} Dr. Shapiro opined that relator "is capable of work with no limitations."

{¶ 55} Given the determination of residual functional capacity, the SHO undertook an analysis of the non-medical factors. In that analysis, the SHO considered relator's age of 59 years, his limited 11th grade education, his 38 year work experience which includes "building maintenance" and supervising inmates as a corrections officer.

{¶ 56} The SHO concluded:

> Staff Hearing Officer finds that based upon the Injured Worker's lengthy work history documenting a positive work ethic and demonstrated ability to maintain employment involving supervisory duties, that Injured Worker has transferable skills that would allow him to perform work in the sedentary category consistent with the reports of Dr(s). Fink, Scheatzle, and Zellers.

{¶ 57} Significantly, relator concedes that the SHO appropriately determined residual functional capacity. Relator here states:

> Relator does not intend to quarrel with the SHO's finding that he had reached maximum medical improvement, could no longer return to his former position of employment as a corrections officer, but is capable of sedentary work. * * * Some evidence supports those determinations in the form of the reports that were prepared by Eli Fink, M.D., Paul Scheatzle, M.D., and George Zellers, M.D. * * * Loren Shapiro, Ph.D., had concluded that Relator could work without any limitations, but only with regard to psychological functioning. * * * That was also the same limited opinion that was furnished by the Employer's psychologist, Donald J. Tosi, Ph.D. * * *
>
> The SHO thus properly proceeded to consider the non-disability factors.

(Relator's brief at 10-11.)

{¶ 58} It is clear that the SHO determined that relator is capable of sustained remunerative employment based on the relied on medical evidence and an analysis of the non-medical factors such as age, education, and work record. This was a determination rendered under Ohio Adm.Code 4121-3-34(D)(2)(b) and (c). That relator failed to enter a vocational rehabilitation program, for whatever reason, does not detract from the SHO's analysis that relator is able to perform sustained remunerative

employment based on the relied on medical evidence and consideration of the non-medical factors.

{¶ 59} Given the above analysis, the magistrate concludes that the six paragraphs of the SHO's order previously identified are severable from the remainder of the order. *See State ex rel. Barnett v. Indus. Comm.,* 10th Dist. No. 14AP-628, 2015-Ohio-3898.

{¶ 60} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).